IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LYNDA TALBOT,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>FORECLOSURE CONNECTION, INC.,<br>JASON WILLIAMS, and DAVID GARCIA,<br><br>　　　　　Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:18-cv-169<br><br>Judge Clark Waddoups |

## INTRODUCTION

Lynda Talbot contends she was a non-exempt employee at Foreclosure Connection, Inc., and accrued over 600 hours of overtime between January 2017 to November 2017, for which she was not paid. She has filed a Motion for Sanctions on the ground that Defendants engaged in discovery abuses. For the reasons stated below, the court grants Ms. Talbot's motion.

## FACTUAL BACKGROUND

**Talbot' Employment**

Foreclosure Connection, Inc. (the "Company") purchases properties that are in foreclosure, renovates them, and then rents them. Talbot Affidavit, ¶ 4 (ECF No. 55-1). Ms. Talbot started working for the Company on October 26, 2016, and helped the Company with its accounting and bookkeeping. *Id.* ¶¶ 5, 8. From her start date through December 30, 2016, Ms. Talbot remained

classified as an hourly, non-exempt employee.[1]  *See id.* ¶¶ 15, 21.  On January 1, 2017, the Company changed her status to a salaried, exempt employee.  *Id.* ¶ 22.  Defendant Jason Williams contends that Ms. Talbot asked him if she could be a salaried employee, and because it made sense for the Company, he agreed.  J. Williams Affidavit, ¶ 9 (ECF No. 62-1 at 13).[2]  When Ms. Talbot became a salaried employee, however, her pay was equivalent to 40 hours a week at the rate of $25.00 an hour.  *See* Talbot Affidavit, ¶ 22.  In other words, she received no pay increase.  Ms. Talbot contends her job duties never changed when she was reclassified as a salaried employee. *Id.* ¶ 26.  Mr. Williams contends the opposite.  J. Williams Affidavit, ¶ 12 (ECF No. 61-1 at 14).

Ms. Talbot alleges that while she was on a salary she accrued over 600 hours of overtime from about January 2017 to October 2017.  Talbot Affidavit, ¶ 38.  Then when her hours dropped to about thirty hours a week in October, Alisha Williams, the President of the Company, explained during an evidentiary hearing "we weren't going to pay her salary for a 40-hour work period and only get 30 hours of work."[3]  Hearing Tr., at 24 (ECF No. 55-4).  As a result, the Company switched her back to hourly pay on November 1, 2017.  Talbot Affidavit, ¶ 36 (misstating year as 2018).  Seven days later, on November 8, 2017, Ms. Talbot was terminated for cause.[4]

---

[1]  The Company asserts Ms. Talbot was paid as an independent contractor at the start of her employment due to a job posting through a temporary employment agency.  What Ms. Talbot's employment classification was from October through December 2016 does not alter the court's analysis for the motion before the court.  The court, therefore, does not address this issue.

[2]  When the court cites a page number from a document in the record, the reference is to the ECF pagination at the top of the page rather than any numbering at the bottom of the page.

[3]  The evidentiary hearing occurred on December 11, 2017, before an administrative law judge who addressed Ms. Talbot's claim for unemployment.  Hearing Tr., at 2 (ECF No. 55-4).

[4]  Ms. Talbot asserts she had to place her mother in assisted living and was attempting to get a second job started at the same time.  Hearing Tr., at 40–44 (ECF No. 55-4).  Due to her asserted

**Prior FLSA Violation**

During the same time period as Ms. Talbot's employment with the Company, Mr. Williams and the Company were defendants in a lawsuit for violating the Fair Labor Standards Act ("FLSA"). The United States Secretary of Labor initially sued the Company on September 11, 2015 for matters involving employees other than Ms. Talbot. The Secretary alleged the Company and Mr. Williams had retaliated against the employees for reporting the Company's failure to pay them overtime. Additionally, the Secretary alleged the defendants had obstructed the Department of Labor's ("DOL") investigation by withholding and falsifying documents. On September 22, 2015, a Preliminary Injunction was issued by Judge Dale A. Kimball in this district. Among other things, the defendants were enjoined from (1) retaliating against employees, (2) "altering, editing, and/or destroying Defendants' time records and records reflecting payments made to employees of or workers for Defendants," (3) obstructing the DOL investigation, and (4) falsifying documents. Preliminary Injunction, at 1–2 (ECF No. 16 in Case No. 2:15-cv-653).

After the Preliminary Injunction was imposed, Mr. Williams pressured an employee to falsify a document. Findings of Fact & Conclusions of Law, at 16 (ECF No. 62 in Case No. 2:15-cv-653). When the employee refused, Mr. Williams informed him he would have no more work and constructively fired him. *Id.* Mr. Williams did not report the termination to the DOL as required by the Preliminary Injunction. Judge Kimball found Mr. Williams' actions violated four provisions of the Preliminary Injunction. *Id.* at 16–17. Judge Kimball further found the Company and Mr. Williams had "failed to come into compliance with the FLSA even while under the direct

---

family obligations and other job, Ms. Talbot did not show up for work and was terminated on that basis.

scrutiny of [the DOL] and an order from the Court." *Id.* at 38.

The Company and Mr. Williams further impeded litigation by failing to produce documents and denying they had such documents. *Id.* at 14, 35–36. Notably, Mr. Garcia had the responsibility to gather the requested records that were produced untimely during the litigation. *Id.* at 14. Defendants also provided falsified tax documents, which Mr. Garcia later admitted where not provided to employees in the years specified. *Id.* at 14–15.

Following a six-day bench trial, Judge Kimball concluded the Company had willfully violated the FLSA. *Id.* at 35–36. Part of that finding was based on the recorded conversation that showed Mr. Williams knew about FLSA requirements and had deliberately chosen to violate them. *Id.* at 35. The recording further showed that Mr. Williams had instructed multiple employees to lie and evade DOL investigators on threat of retaliation. *Id.* He also had instructed employees to falsify documents. *Id.* at 35–36. Judge Kimball ordered the Company to pay for overtime the employees had worked, along with other damages.

On May 17, 2017, Judge Kimball issued an injunction that permanently enjoins the Company and Mr. Williams from violating the FLSA, including its overtime provisions, and "from altering, editing, and/or destroying Defendants' time and payroll records." Permanent Injunction, at 2 (ECF No. 64 in Case No. 2:15-cv-653). The injunction has remained in effect since its inception and was in effect at the time of the events alleged in this case.

**Reported Spoliation of Evidence**

Five months after the Permanent Injunction issued, the dispute with Ms. Talbot started. During a meeting on October 16, 2017 with Jason and Alicia Williams, David Garcia, and Ms.

Talbot, Ms. Williams recorded the conversation.[5]  When Ms. Talbot learned about the recording, she requested that the defendants provide her a copy.  Ms. Williams attested in affidavits that she provided the recording on a CD to Ms. Talbot at the time of the DWS hearing in December 2017.  Second A. William Affidavit, ¶ 24 (ECF No. 62-1 at 5); Third A. William Affidavit, ¶¶ 10–11 (ECF No. 73).  Ms. Williams' third attestation came after the court admonished "all parties, Ms. Williams, and counsel to take care in the representations" they made to the court.  Order, at 3 (ECF No. 69).  Nevertheless, the court finds the evidence in the record does not support Ms. Williams' attestation.

After the Company terminated Ms. Talbot, she filed for unemployment.  The Company opposed payment of unemployment on the ground that Ms. Talbot had been terminated for cause.  The Department of Workforce Services ("DWS") concurred following an administrative hearing in December 2017.  Although the administrative hearing focused on Ms. Talbot's unemployment claim, emails around the time of the hearing and the transcript of the hearing are instructive on Ms. Talbot's present request for sanctions.

Prior to the administrative hearing, the parties submitted evidence to DWS.  The Company submitted a CD that purportedly contained the recording of the October 2017 meeting.  Because the meeting lasted for over two hours, the Chief Administrative Law Judge requested that the

---

[5]    Defendants attest "that someone routinely recorded events such as important meetings and depositions that Jason Williams participated in so that Jason would have his own record to later replay in lieu of Jason taking notes as he is blind and unable to take notes."  A. Williams Affidavit, ¶ 12 (ECF No. 62-1 at 3).  Defendants further attested that "tapes are generally recorded by David Garcia on his cell phone."  Discovery Responses, at 10 (ECF No. 55-10); *see also* Garcia Affidavit, ¶ 9 (ECF No. 62-1 at 9) (stating he routinely recorded meetings unless someone else was recording it).  In this case, however, Ms. Williams attested that she recorded the October 16, 2017 meeting on her cell phone.  A. Williams Affidavit, ¶ 11 (ECF No. 62-1 at 3).

Company submit only relevant excerpts of the meeting.[6]  The Company then selected three segments, and only those excerpts were admitted at the hearing.  It was through this process that Ms. Talbot learned that the meeting had been recorded.

On December 7, 2017, Ms. Talbot sent an email to Defendants stating the following:

> Yesterday it was brought to everyone's attach [sic] that the complete conversation of 10/16/2017 . . . was recorded.  I request a complete copy of that conversation/meeting as to I was the main focus.  Be provided to me and the Federal Wage and Labor Division.  I would be glad to compensate Foreclosure Connection, Inc. for any financial inconvenience.
>
> I do not want this new found evidence to slip away like so many other[] things do.  Or be corrupted, or changed. . . .
>
> Thank you for recording the conversation on 10/16/2017, it can completely explain the unpaid issues of overtime on my behalf.

Email, at 2 (ECF No. 55-5).

On Sunday, December 10, 2017, Ms. Talbot sent an email to DWS and the defendants informing them she could not open certain email attachments that she had received from the defendants.  The attachments were two excerpts of the recording.  Ms. Talbot then stated, "[n]ow concerning the 10/16/2017 recording on Mr. David Garcia's phone[7] I have formally requested a complete copy of this as seen on 12/07/2017 due to the ongoing case with the Federal Wage and Labor Commission.  That one recording would explain the yet unresolved issue of unpaid overtime."  *Id.* at 3.  Ms. Talbot concluded her email by stating, "[a]gain I still desire a complete

---

[6]  As addressed further below, some confusion on the CD exists.  DWS now reports the CD was blank when received.

[7]  Later information supports that Ms. Williams recorded the conversation and not Mr. Garcia.  A. Williams Affidavit, ¶ 11 (ECF No. 62-1 at 3).

copy of the conversation of 10/16/2017, which is found on Mr. Garcia's Phone and would gladly . . . pay for the reproduction for both myself and the Federal Wage and Labor Commission." *Id.* at 4.

The following day, on December 11, 2017, DWS held a hearing on Ms. Talbot's unemployment claim.  Although the hearing was about unemployment, Ms. Talbot raised the issue about her wage claim.  She asked if the defendants had "entered into this court a complete recording of the conversation on 10/16/2017?"  Hearing Tr., at 13 (ECF No. 55-4).  The ALJ responded, "[t]here is a segment of the recording, but not the complete recording.  It was a long recording and so the Chief Administrative Law Judge asked that portions—the relevant portions be submitted because it was over two hours." *Id.*  Towards the end of the hearing, Ms. Talbot asked for the "full recording of that 16th meeting," because "more things were discussed on that recording . . . [that] had to do with the labor commission in the overtime." *Id.* at 43.  Her request was denied by the ALJ because DWS was only addressing unemployment and not wage matters. *Id.* at 44.

On February 26, 2018, Ms. Talbot filed a *pro se* Complaint, which commenced this case. Complaint (ECF No. 3).  In that Complaint, Ms. Talbot asserted a civil rights action under § 1983. The body of the Complaint, however, stated the nature of her case was "unpaid overtime" and other compensation matters. *Id.* at 3.  She noted in her Complaint that she would be seeking to acquire "Recording 10/16/2017." *Id.* at 4.

After Defendants filed a Motion to Dismiss, Ms. Talbot filed a Motion Supporting Correct Jurisdiction, along with a supporting affidavit.  She attested the Company had a common practice of "leaving former employee's unpaid."  Talbot Affidavit, ¶ 7 (ECF No. 11 at 2).  She also noted

her "[c]ontinuing attempts to receive a full audio copy of the recording made by my former employers." *Id.* ¶ 8.  She attached copies of subpoenas she had tried to serve on Defendants by certified mail, requesting the recording again, but the mailings went unclaimed.  *Id.* at 7–12.

On April 13, 2018, Ms. Talbot filed a Motion to Amend Complaint (ECF No. 19).  In her proposed Amended Complaint, she stated she was asserting a claim for unpaid overtime and other unpaid compensation.  Proposed Amended Complaint, at 1 (ECF No. 19-1).  She asserted she was not an exempt employee, and noted she had subpoenaed records, "[i]ncluding a complete copy of an Audio recording on 10/16/2017."  *Id.* at 2.  For relief, she said she wanted payment of all amounts, "[a]nd the entire copy of the audio recording of 10/16/2017."  *Id.*

On April 20, 2018, Ms. Talbot filed a Motion Asserting the Courts Enforcement of the Subpoena's Isssued (sic).  Ms. Talbot attached the subpoenas she had attempted to serve on Defendants, and which requested the "Entire Audio recording of 10/16/2017," as well as time records.  Motion and Exhibits, at 1, 4–7 (ECF No. 20).  Magistrate Judge Dustin B. Pead denied the motion on the ground the motion to dismiss and motion to amend had to be heard first.  Order, at 1 (ECF No. 22).  Nevertheless, Ms. Talbot's filing is relevant to the issue of notice.

In May 2018, Ms. Talbot had subpoenas personally served on Mr. Garcia, Ms. Williams, and Mr. Williams, which requested "Complete Audio recording of 10/16/2017, complete payment history for Lynda Talbot 10/01/2016 to 11/30/2017 . . . and all electrionic [sic] communications both email and text during the above time frame."  Subpoenas, at 2–9 (ECF No. 55-9).  On May 21, 2018, Judge Pead quashed the subpoenas consistent with his previous order and directed Ms. Talbot not to issue further subpoenas until he resolved pending motions and a scheduling order was entered.  Order, at 1 (ECF No. 28).  Notably, although the subpoenas were quashed,

Defendants acknowledged they had been served with them.  Second Motion to Quash, at 2 (ECF No. 27).  Again, this goes to the issue of notice.

On June 1, 2018, the Utah Court of Appeals affirmed DWS's decision that Ms. Talbot had been terminated for cause.  Order of Summary Disposition (ECF No. 62-1 at 16).  The decision noted that Ms. Talbot had "claimed that she was denied a complete copy of the two-hour recording," and that she "had an ongoing dispute with the employer before the Labor Commission and may have wanted to use the recording to explore issues related to that case." *Id.* at 18.

On June 8, 2018, Ms. Talbot filed a motion asking for leave to serve an Amended Complaint by alternative means because her process server had attempted to serve Defendants multiple times, but they were avoiding service.  Ms. Talbot attached documents from her process server showing active efforts by Defendants to evade service.  Service Documents, at 5–10 (ECF No. 32).  Judge Pead denied the motion and directed her not to file further motions until he resolved the motion to dismiss and motion to file an amended complaint.  *See* Docket Text Order (ECF No. 34).

On July 3, 2018, Judge Pead granted Ms. Talbot leave to amend, but directed her to correct the deficiencies in her complaint.  Order, at 6 (ECF No. 36).  He denied the motion to dismiss.  *Id.* On July 18, 2018, counsel for Ms. Talbot appeared and filed an Amended Complaint asserting violation of the FLSA rather than a § 1983 action.  Amended Complaint, at 1 (ECF No. 37).

On January 18, 2019, in response to a formal interrogatory requesting information about any recordings involving Ms. Talbot, Defendants responded as follows:

> As to recordings of meetings where Plaintiff was present, she was provided copies as well as the Utah Department of Workforce Services.  Plaintiff claimed she was unable to listen to the tapes. Same recordings were sent to the State for their investigation and a

> scheduled hearing related to Plaintiff's claim of unemployment benefits. The recordings were played by the Administrative Law Judge, without objection from Talbot, at the hearing and she was able to listen to such. The tapes were maintained pending the entire appeal process that Talbot initiated and *afterward there was no reason to maintain and such deleted*. [8]

Response to Interrogatory No. 10, at 10 (ECF No. 55-10) (emphasis added). In answer to a request for production "of any and all recordings of the Plaintiff," Defendants responded, "All recordings of meetings where Plaintiff was present were solely for the purpose of Jason Williams and after his use *all have been deleted*." Request No. 7 and Response to Request No. 7, at 12 (ECF No. 55-10) (emphasis added).

On April 19, 2019, Ms. Williams attested, "as Jason Williams no longer needed the 10/16/2017 Meeting recording, the unemployment matter ended, and she needed to free up space on her personal cell phone, Affiant *deleted the recording from her cell phone in early June 2018*." A. Williams Affidavit, ¶ 28 (ECF No. 62-1 at 5) (emphasis added). By June 2018, Ms. Talbot had asked for the recording or referenced the need to produce it multiple times. Moreover, this litigation had been commenced four months earlier and was ongoing at the time Ms. Williams deleted the recording.

---

[8] The "recordings" referenced in this paragraph only pertain to the three excerpts. It is those excerpts that Ms. Talbot had difficulty playing when they were sent to her as an attachment to an email. She objected to the excerpts being admitted because she was unable to listen to two of them. Hearing Tr., at 13–14 (ECF No. 55-4). The ALJ resolved that objection by playing the excerpts at the hearing. *Id.* at 14. After the excerpts were played, the ALJ asked if Ms. Talbot had any objections to their admission. *Id.* at 33. The transcript is clear that Ms. Talbot did object to one of the excerpts being admitted without its full context. *Id.* The objection was overruled. *Id.* The interrogatory response is therefore misleading and inaccurate.

**Motion for Sanctions**

After being informed the defendants spoliated evidence by deleting the recording, Ms.

Talbot filed a Motion for Sanctions.[9]   In opposition to the motion, Defendants asserted the

following:

> Plaintiff's motion for sanctions is a desperate attempt to create a
> genuine issue of material fact – specifically that the parties agreed
> to "compensatory time" in lieu of overtime and her only alleged
> evidence to support this claim she raised for the first time on March
> 27, 2029, just so happens to be on a deleted recording . . . .

Memo. in Opp'n to Sanction Mot., at 1 (ECF No. 62).  Defendants also argued there was no other

evidence of a compensatory agreement, and if the court allowed an adverse inference that the

recording contained such information, it "would open the door to other parties" to also "claim that

the lost or destroyed evidence in their case contained the only evidence to support their position."

*Id.* at 6.

Defendants pointed out that "courts require evidence of intentional destruction or bad faith

before a litigant is entitled to a spoliation instruction."  *Id.* at 7 (citing *Aramburu v. Boeing Co.*,

112 F.3d 1398, 1407 (10th Cir. 1997).  Defendants then asserted:

> It is important to point out at this juncture that although Plaintiff
> asserts that Defendants destroyed the recording and even states that
> the Defendants admitted they destroyed the recording, that goes
> against the evidence produced.  Alicia Williams testifies in her
> Affidavit that she deleted the recording on her phone.  Deleting is
> an act of removing.  Destroying on the other hand conjures up
> images of smashing the recording (cell phone).

*Id.* (footnotes omitted).

---

[9]  In her motion, Ms. Talbot also reported that the defendants had not produced certain time and
payroll records. She noted it for purposes of showing how the defendants have obstructed
discovery and not for purposes of seeking additional sanctions.  Reply Memo., at 6 (ECF No. 63).

Defendants further asserted they did not act in bad faith because Ms. Talbot had styled her

Complaint as a Civil Rights claim.

> Defendant knew that the recording had absolutely nothing to do with a Civil Rights claim and therefore reasonably believed in light of the need for cell phone storage space and Jason Williams had long before indicated he no longer needed the recording plus the fact they had provided the recording to Plaintiff for the unemployment hearing, it was ok to delete.

*Id.* at 12.

Finally, Defendants argued the court should not impose sanctions because Ms. Talbot had

failed to follow Rule 37 of the Federal Rules of Civil Procedure.  *Id.* at 14.  She did not even seek

a "meet and confer."  *Id.* at 15.  Additionally, Ms. Talbot did not file a Short Form discovery

motion.  *Id.*

**Hearing on Motion for Sanctions**

The court held a hearing on the sanctions motion on October 9, 2019, where Defendants'

counsel argued the defendants could not have known they needed to preserve the recording because

he did not tell them to do so.  Order, at 2 (ECF No. 69).  The court was troubled by the argument

because Defendants are not unsophisticated litigants.  *Id.* at 1–2. Defendants are under a Permanent

Injunctions for prior destruction of evidence and willfully violating the FLSA.  Additionally,

Defendants' counsel is the same counsel who had represented the defendants in the previous

lawsuit.  Nevertheless, Defendants' briefing has been devoid of recognition that *willfully* deleting

evidence is a problem.  Based on the posture of the case, the court informed Defendants the issue

was "not whether sanctions will be imposed against Defendants for spoliating evidence again, but

what those sanctions will be."  *Id.* at 2.

Because of Defendants' continued representations that they had provided the recording to

Ms. Talbot as part of the unemployment hearing, however, the court required Defendants to provide supplemental evidence to prove that fact. *Id.* at 3. Defendants subsequently provided a statement from DWS stating a CD had been provided, but "the disc they received was blank" and "it was likely destroyed." DWS Response, at 12, 15 (ECF No. 70). Foreclosure Connection then sent three audio files to DWS containing short portions of the recording. *Id.* at 15. Those were the recordings played at the hearing.

Defendants' supplemental evidence also referenced a letter Ms. Talbot sent to DWS by fax on December 6, 2017. A timestamp shows the letter was received at 4:07 p.m. that day. Talbot Lttr., at 17 (ECF No. 70). After summarizing the evidence she had received from Defendants, Ms. Talbot said:

> Now I would like to present the additional exhibits I have prepared, along with a [Thank You] to Foreclosure Connection, Inc. for providing the necessary information needed to receive my overtime from the Federal Wage Commission. I have forwarded the recording to them, my case for the overtime of $23,151.01, has just been made.

*Id.* at 19. Ms. Talbot then referenced the recording multiple times and its contents. *Id.* at 20–21. Defendants contend unless Ms. Talbot had the full recording, she could not have made the statements she made. Defs. Supp. Brief, at 16 (ECF No. 70). The court disagrees.

Ms. Talbot sent her letter on December 6, 2017 at 4:07 p.m. At 11:55 that day, Ms. Williams sent the first audio excerpt to Ms. Talbot and DWS. Email, at 6 (ECF No. 70-2). At 12:41 p.m., Ms. Williams sent the second and third excerpts. Email, at 7 (ECF No. 70-2). Ms. Talbot asserted at the hearing, however, she did not learn about the other two excerpts until later and could not open them. Hence, Ms. Talbot's reference to "the recording" did not signify she had received the full recording. It appears to reference the first excerpt.

13

When Ms. Williams submitted the first excerpt to DWS, she noted the topics discussed on it. *Id.* at 6. She stated that Ms. Talbot "acknowledge[d] she knew she was not going to make any overtime and that she wasn't making $25.00 an hour with her salary and she even says that is correct." *Id.* Ms. Williams' statement to DWS was misleading because, as discussed below, Ms. Talbot had asserted on other portions of the full recording that she believed she would be receiving overtime. Had Ms. Talbot been given the full recording, she could have submitted portions to show Ms. Williams was not forthright on the overtime matter.

Moreover, as stated above, on December 7th and 10th, Ms. Talbot had asked Defendants to provide her with a copy of the full recording. During the hearing on December 11th, Ms. Talbot reiterated her requests for a copy of the full recording, and the ALJ denied that request. Hearing Tr., at 13, 43–44 (ECF No. 55-4). At no point during the hearing did Defendants say they had given Ms. Talbot the complete recording. These contemporaneous events rebut that Ms. Talbot's December 6th letter referred to receiving the complete recording. Moreover, the contemporaneous events rebut Ms. Williams' present attestations to the contrary and Defendants' supplemental briefing.

In contrast, Ms. Talbot's supplemental briefing contained even more documentation about requests or inquires she had made for the recording in late 2017 and early 2018. Emails, at 109, 112 (ECF No. 71-1) (asking DOL to obtain the recording to assist in her wage claim). When coupled with all the evidence previously provided, it supports that Ms. Talbot persistently and continuously sought the recording. Such efforts refute any claim that the recording was provided to her despite Defendants' representations to the court to the contrary.

The court also notes Defendants' purported production of the full recording runs contrary

to their pattern of production.  During the hearing, the ALJ instructed the defendants to email the

second excerpt to Ms. Talbot again.  Hearing Tr., at 33 (ECF No. 55-4).  Defendants delayed doing

so.  When Defendants filed a Motion to Dismiss in this case, the evidence shows they did not serve

Ms. Talbot; she found out about it and avoided dismissal by happenstance.  Motion Supporting

Jurisdiction, at 1–2 (ECF No. 10).[10]  Defendants also withheld production of time and payroll

records until after this court ordered their production.  *See* Order, ¶ 6 (ECF No. 69 at 4).  When

Defendants did produce them, they stated the following:

> Defendants emailed payroll records on 1/16/2019 directly to their
> counsel and counsel inadvertently believed they were also sent to
> Plaintiff's counsel per Plaintiff's request for production of
> documents.  If Plaintiff's counsel would have inquired about the
> missing documents by email, or phone, or letter or the like,
> Defendant's Counsel would have noted his error and provided the
> missing documents.

Defs. Supp. Brief, at 1 (ECF No. 70-1).  This is a curious response.  Ms. Talbot filed her Motion

for Sanctions on April 9, 2019.  Although the Motion was not directed towards production of the

payroll records, Ms. Talbot did inform the court those records had not been produced.  And yet,

Defendants never remedied the problem until November 6, 2019 upon order of the court.

Defendants engaged in a pattern of non-production in the case before Judge Kimball and

appear to have continued that pattern in this case.  Based on the totality of Defendants' actions,

there simply is no credible evidence that they provided Ms. Talbot a copy of the recording in

December 2017.  Thus, their purported deletion of the recording in June 2018 was egregious.  Most

---

[10]  The court asked Defendants' counsel to provide the email showing proof of service if he could
rebut Ms. Talbot's contention.  Order, ¶ 8 (ECF No. 69 at 4).  Defendants' counsel could not do
so.  Instead, he only provided proof of service of Defendants' reply to the Motion to Dismiss.  *See*
Defs. Supp. Briefing, at 19, 27–30 (ECF No. 70-2).

notably, however, after the court informed Defendants they would be sanctioned and the only issue that remained was what the sanction would be, Defendants were able to produce a copy of the recording they had withheld for almost two years.  Notice of Filing (ECF No. 74).

**Contents of the Recording**

The recording contains a discussion about Ms. Talbot being switched from an hourly employee to a salaried employee.  It also contains a discussion about the responsibilities Ms. Talbot had and the degree of control the defendants exercised over her.  This evidence is relevant to Ms. Talbot's FLSA claim.

Additionally, the recording does contain a discussion about Ms. Talbot's overtime.  Ms. Talbot said she would use her excess hours to offset time she would be away from the office. Recording, at 24:50.  She commented "that was the way we'd worked it."  *Id.* at 25:00.  She further said they had told her she would need to be paid for the excess hours, and so she kept track of them.  *Id.* at 25:05.

At about 37:00 on the recording, Mr. Williams said they were moving her back to hourly because he would not pay her for 40 hours when she only worked 20 hours.  At about 37:15, Ms. Talbot again said she would use her excess hours to fill the difference.  Defendants then disputed they had discussed excess hours, and said because she was a professional, she could only receive compensatory time by agreement of management.   When Ms. Talbot attempted to state her understanding of their agreement, she was cut off.  At 53:45, Ms. Talbot brought up that Mr. Williams had been excited about her working on salary because of the financial benefit to him. She said she had worked long hours to get the office in order and essentially had been paid the equivalent of $12.50 per hour.  At about 54:18, she attempted again to state her understanding of

their agreement, but Defendants cut off her statement.

The recording shows the thinking of the respective parties before Ms. Talbot was terminated and litigation arose. Additionally, on November 2, 2017, Ms. Talbot sent an email to Mr. Garcia. She stated, "Jason and I discussed that . . . when I was caught up which is where I am he would be paying me for less than 40 hours due to the fact I had worked much more than that to bring his/or Leesa's company current." Email, at 3 (ECF No. 55-6). The email also was sent before Ms. Talbot was terminated.

The recording and email are contrary to the following representation Defendants made to the court in an effort to obtain summary judgment:

> In the case at hand Plaintiff has for the first time ever inserted an allegation that Defendants agreed that she could have compensatory time for time she worked in excess of 40 hours a week. Aside from the fact none of the Defendants are aware of any agreement as to "compensatory time," *there is not a scintilla of evidence to support this allegation*. There are *no emails*, no indications reflected on payroll records, *no recording*, no written agreement, nothing. . . In short, this is a *sham argument* raised for the first time after Defendants filed their motion for summary judgment.

Defs. Sum. Jdmt. Reply Memo., at 8–9 (ECF No. 58) (emphasis added). The email and recording also are contrary to affidavits submitted by Defendants where they attested under oath that a compensatory agreement had never been discussed or agreed to by them. *See* J. Williams Aff'd, ¶ 7 (ECF No. 58-1 at 3); Garcia Aff'd, ¶ 7 (ECF No. 58-1 at 7); *see also* Defs. Opp'n Memo to Sanction, at 3 (ECF No. 62) ("Defendants state that the parties did not discuss 'compensatory time' during the entire 10/16/2017 Meeting."). The court is not saying the recording provides conclusive evidence that a compensatory agreement was reached. But the evidence does refute Defendants' attestations that the topic of compensatory time was never discussed. Now that the court has reviewed the

recording, it does show Defendants withheld an important piece of evidence from Ms. Talbot.

**Defendants' Subsequent Argument**

Finally, in Defendants' supplemental response, Defendants again asserted Ms. Talbot was at fault for not following Rule 37 and engaging in a meet and confer, and had she followed the rules, "we may not be here now arguing about sanctions." Defs. Supp. Response, at 3–4 (ECF No. 75). Defendants further asserted that since the recording was recovered and produced, the comment to Rule 37-1(e) provides "there is nothing further to do on the matter." *Id.* at 4.

## ANALYSIS

"Discovery is not supposed to be a shell game, where the hidden ball is moved round and round and only revealed after so many false guesses are made and so much money is squandered." *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011). For reasons that are inexplicable, neither Defendants nor Defendants' counsel seem to recognize how serious their discovery abuses are despite being under an injunction from past discovery misconduct. Before proceeding to address what sanctions will be imposed, the court addresses Defendants' argument about Rule 37 requirements.

## I.    RULE 37 REQUIREMENTS

Rule 37(a) requires a party to meet and confer with opposing counsel before filing a motion to compel discovery. Fed. R. Civ. P. 37(a). Ms. Talbot, however, did not move to compel Defendants to produce the recording. She moved for sanctions after Defendants told her they had deleted the recording in June 2018 despite Ms. Talbot's repeated requests for production of the recording since December 2017. When a party has destroyed evidence, whether it be by deleting

a recording or smashing a cell phone, there no longer exists evidence for which production may be compelled. Thus, Rule 37(a) is inapplicable.

Rule 37(e) addresses electronically stored information that is lost and cannot be recovered. A Committee Note clarifies Rule 37(e) "applies only when such information is lost. Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. At the time Ms. Talbot filed her Motion for Sanctions, the posture of the case was that Defendants had deleted the recording and had no substitute for it. Only after the court informed Defendants they would be sanctioned, did Defendants produce the recording. Such production does not excuse Defendants from sanctions because the fact remains Defendants engaged in discovery abuses. Defendants representations and attestations to the court also have been troubling.

The Tenth Circuit has stated "a court may exercise its inherent powers to sanction bad-faith conduct that abuses the judicial process." *Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2018) (citation omitted). It is upon that authority that the court addresses the defendants' discovery abuses.

## II.   DISCOVERY ABUSES

### A.   Reported Spoliation

Ms. Talbot initially moved for judgment in her favor as a sanction for spoliation of evidence. "Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Public Serv. Co.*, 563 F.3d 1136,

1149 (10th Cir. 2009) (quotations and citations omitted).  Ms. Talbot presented evidence sufficient to meet that standard.  Hence, the court concluded it would impose sanctions and sought further information to determine what those sanctions should be.

As stated above, Defendants then changed course.  They produced the recording that supposedly had been destroyed and for which there was no other copy.  Thus, the court's analysis now takes into consideration that production.

## B.    Ehrenhaus Factors

Ms. Talbot contends even though the recording has been produced, default should still be entered due to Defendants' conduct.  The Tenth Circuit has stated "dismissal represents an extreme sanction appropriate only in cases of willful misconduct."  *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (citations omitted).  The court applies the same standard to Ms. Talbot's request for default judgment.

The Tenth Circuit also has noted that "[i]n many cases, a lesser sanction will deter the errant party from further misconduct."  *Id.*  Although the court has inherent authority to impose a sanction for discovery abuses, the "sanction must be both 'just' and 'related to the particular claim'" at issue.  *Id.* (citation omitted).  Thus, the Tenth Circuit has set forth the following factors for consideration when a court determines if default is appropriate:  "'(1) the degree of actual prejudice to the [party]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.'"  *Id.* at 921 (quotations, citations, and alterations omitted).  These factors "do not represent a rigid test" and are non-exclusive.  *Lee*, 638 F.3d at 1323 (quotations and citations omitted).

i.      *Degree of Actual Prejudice*

This litigation pertains to whether Ms. Talbot was a non-exempt employee entitled to overtime pay.[11]  Relevant to that decision are discussions Ms. Talbot had with Defendants about why they changed her from an hourly employee to a salaried employee, what her job duties were, the degree of control the defendants exercised over her, and whether there was any overtime agreement.  The recording provides relevant information on these issues.  Had it actually been destroyed and non-recoverable, Ms. Talbot would have been denied an important piece of evidence.  Now that the recording has been produced, the remaining prejudice to Ms. Talbot arises from the costs she incurred as a result of Defendants' action and delayed resolution of this case.  The Tenth Circuit has "recognized prejudice from 'delay and mounting attorney's fees.'" *Faircloth v. Hickenlooper*, 758 F. App'x 659, 662 (10th Cir. 2018) (quoting *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993)).  Both have occurred here due to Defendants' actions.  Thus, while the prejudice is not as great as it would have been, prejudice is still present.

ii.      *Amount of Interference with the Judicial Process*

With respect to the second factor, the court concludes Defendants' conduct resulted in substantial interference with the judicial process.  Although Defendants have now produced the recording, the production occurred only after multiple requests for production, full briefing on a motion for sanctions, a hearing on the motion, and an order stating sanctions would be imposed.

---

[11]  Defendants' briefing contains argument that compensatory time was never at issue.  Memo. in Opp'n to Sanctions Mot., at 8–10 (ECF No. 62).  This misses the point.  Regardless of whether Defendants discussed overtime pay or compensatory time in lieu of pay, Ms. Talbot asserts Defendants violated the FLSA by not compensating her for over 600 hours of overtime.  She has asserted her overtime claim from the outset.  Defendants' argument therefore is not well-taken for purposes of this motion.

Defendants also attempted to persuade the court that Ms. Talbot manufactured a sham argument and that she had created the present problem by not pursuing a meet and confer with the defendants. Ms. Talbot then had to defend herself against these accusations.[12]  Defendants have abused the litigation process significantly without any apparent acknowledgment that their conduct was improper.

### iii.      Degree of Culpability

To establish "willfulness, bad faith, or some fault," a moving party must prove discovery abuses by clear and convincing evidence.  *Xyngular*, 890 F.3d at 873 (quotations and citation omitted).  Ms. Talbot has met this standard.  Defendants had clear notice that the recording was relevant to Ms. Talbot's wage claim.  She asked for the recording many times so it could be submitted to the Labor Commission on her wage claim.  She never did receive it for that proceeding.

When Ms. Talbot filed a *pro se* civil rights complaint, Defendants contend that did not put them on notice.  Such an argument is specious.  Although Ms. Talbot did not cite to the FLSA properly, she did state her complaint was for overtime and she expressly identified the recording

---

[12] Defendants' briefing attempts to divert the court through red herring arguments.  For example, they refer to the unemployment proceedings where DWS determined Ms. Talbot had been terminated for cause and had to repay unemployment benefits due to a finding of fraud.  The court notes that "fraud" in the unemployment context is unlike fraud in most legal contexts.  Under DWS rules, "[k]nowledge is established when the claimant knew *or should have known* that the information submitted to the Department was incorrect or that the claimant failed to provide required information."  *Migenes v. Dep't of Workforce Servs.*, 2016 UT App 129, ¶ 4, 378 P.3d 116 (citing Utah Admin. Code R994-406-401(a)(b)).  And if a claim or document contains "false statements, responses or deliberate omissions," then willfulness is established.  *Id.* (citing Utah Admin. Code R994-406-401(1)(c)).  Thus, if a document has a false statement and the claimant knew *or should have known* that the statement was incorrect, one can be found liable for "fraud" in the unemployment context.  This is a lower and different standard than intentional fraud.  Thus, Defendants' attempt to divert attention away from their own conduct by briefing what occurred during the unemployment proceeding is not well-taken.

as being relevant to her claim.  As stated above, litigation is not a shell game.  Defendants had a *duty* to preserve evidence that Ms. Talbot identified as relevant.  Defendants ignored their duty and deliberately deleted the very evidence Ms. Talbot had requested on multiple occasions.  They then accused Ms. Talbot of creating a sham argument about compensatory time.  And they did not do a comprehensive search of devices to locate a copy of the recording until after they were informed sanctions would be imposed.  The evidence is more than sufficient to prove intentional misconduct by clear and convincing evidence.

iv.   *Warning*

The fourth factor requires consideration of whether Defendants had notice that dismissal was a possibility.  Although this is a factor for consideration, the Tenth Circuit has "point[ed] out that notice is not a prerequisite for dismissal under *Ehrenhaus*."  *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1149 (10th Cir. 2007) (citations omitted).  This means dismissal or default judgment may occur even "without a specific warning."  *Id.*  Nevertheless, "notice is an important element in the *Ehrenhaus* analysis."  *Id.*

Here, the court did not provide notice to Defendants that default judgment was a possibility prior to most of their conduct.  This case, however, does not stand in isolation because Defendants are subject to a permanent injunction enjoining them from further discovery abuses.  The injunction was entered on May 17, 2017.  Permanent Injunction (ECF No. 64 in Case No. 2:15-cv-653).  And yet, by December 2017, Defendants had started to withhold relevant evidence in another dispute.

The injunction is not directly on point for it enjoins "altering, editing, and/or destroying Defendants' time and payroll records."  *Id.* ¶ 5.  The recording was not a time or payroll record.

A court should not have to tell a defendant, however, each and every item a defendant should not destroy.  When Ms. Talbot requested the recording on December 7, 2017, she offered to pay for its production.  She then expressly noted her concern that she did "not want this new found evidence to slip away like so many other[] things do.  Or be corrupted, or changed."  Email, at 2 (ECF No. 55-5).  Ms. Talbot knew that was a possibility because Defendants did that with other evidence while she worked at the Company.  As it turns out, Ms. Talbot had cause for concern because Defendants deliberately deleted the recording in June 2018, and did not restore a copy until November 2019, when facing sanctions.

Moreover, when the court ordered Defendants to produce supplemental evidence, it admonished them to take care in the representations they made to the court.  Order, at 3 (ECF No. 69).  Thereafter, Ms. Williams filed an affidavit under oath that is contrary to the evidence and Defendants' arguments ignore facts in such a way that advocacy ended and misleading information began.  Thus, although the court did not issue a warning about default judgment in this case, Defendants were on notice that their conduct could result in serious sanctions.

### v.  Adequacy of Lesser Sanctions

The court now addresses whether lesser sanctions than default judgment are appropriate.  The court is mindful of "the judicial system's strong preference to decide cases on the merits." *Sanchez v. Beaver County Sheriff*, No. 2:18-cv-69, 2020 U.S. Dist. LEXIS 107853, at *3 (D. Utah June 18, 2020) (citing *DeBardeleben v. Quinlan*, 937 F.2d 502, 504 (10th Cir. 1991)).  Nevertheless, the discovery abuses in this case are unacceptable.  Counsel seems to be complicit rather than acting in a manner to curtail such misconduct.  Besides withholding evidence, Defendants and counsel also have not been forthright with the court in affidavits and

representations.  To this day, Defendants have not shown any awareness that their conduct was wrong.  Instead, they contend that because they produced the recording, there is nothing more that should be done.  As stated before, Defendants' conduct is troubling.

Moreover, this is not the first time Defendants have engaged in abusive litigation tactics. Sanctions are for the purpose of addressing a wrong and deterring future conduct.  If a permanent injunction was insufficient to stop Defendants from destroying evidence and interfering with the litigation process, the court fails to see how a sanction other than default judgment will have any deterrent impact.  Accordingly, the court concludes the appropriate sanction in this case is to enter default judgment on liability.  The court also concludes counsel should be sanctioned personally for his conduct as set forth below.

By imposing these sanctions, the court's purpose is to deter Defendants and counsel from withholding relevant evidence, submitting sworn affidavits with false or misleading information in them, and making arguments to the court or other tribunals that misrepresent facts and law.

## III.     DAMAGES AND SANCTIONS

### A.     Proof of Damages

Although the court concludes default judgment is appropriate on the issue of liability, this does not mean the court accepts Ms. Talbot's representations about the amount of overtime she claims.  Defendants assert they caught Ms. Talbot cheating on her time in October 2017.  Memo. in Opp'n to Sanctions Mot., at 11 (ECF No. 62).  They found her clocked in on a Saturday when she was not in the building.  *See id.*  Because of that action, Defendants called the meeting on October 16, 2017 and the matter is discussed on the recording.

At an administrative hearing, Ms. Williams testified that Ms. Talbot "was salaried so it

didn't matter how many hours she worked.  She was salaried and she got paid for it.  She got paid the same amount of money whether she'd worked 10 hours."  Hearing Tr., 29–30 (ECF No. 55-4). Based on this representation, it begs the question why Defendants considered Ms. Talbot to be cheating on her time if hours were not being tracked.  That said, because issues do exist about how many hours Ms. Talbot worked, a sanction without consideration of Ms. Talbot's actions would be inequitable.

Ms. Talbot asserts "she worked 617.27 of overtime" and "is entitled to $23,147.63 in overtime compensation based on an hourly rate of $25.00."[13]  Talbot Affidavit, ¶¶ 38–39 (ECF No. 55-1).  On the recording, however, there is support that Ms. Talbot performed work on a second job while clocked in at the Company.  The recording also supports that Ms. Talbot was clocked in on a Saturday but was not in the building.  Additionally, Ms. Talbot did not work forty hours a week the last pay period she was on salary.  Instead, she worked 60:19 for that two-week period, but was paid her regular salary.  Pay Stub, at 33 (ECF No. 70-1).

When Defendants finally produced timesheets and payroll records, they noted which time entries were "questionable."  Timesheets, at 35–45 (ECF No. 70-1).  They further noted time entries that were "very confusing" based on how Ms. Talbot clocked out and clocked in.  *Id.*  The

---

[13]  Ms. Talbot also asserts the Company docked $600 from her pay when it switched her from salary to hourly on January 1, 2017.  Talbot Affidavit, ¶ 23 (ECF No. 55-1).  The payroll records for the end of December 2016 and the beginning of January 2017 are inconsistent as to when one payroll period ended and the other started.  *Cf* Dec. Pay Stub (ECF No. 70-1 at 11) *with* Jan. Pay Stub (ECF No. 70-1 at 12); Defs. Statement (ECF No. 70-1 at 1).  The length of first payroll period in January 2017 also is inconsistent with subsequent payroll periods. Nevertheless, the record shows Ms. Talbot was not docked pay.  While it is true the Company paid Ms. Talbot $1,400 rather than $2,000 for that period, it is because the period was shorter.  It included six business days and one holiday for a total of seven compensable days.  *See* Jan. Pay Stub (ECF No. 70-1 at 12).  Seven eight-hour days at $25.00 per hour equals $1,400.  Thus, the Company did not dock her pay due to the New Years holiday.

court does not address the "confusing" entries for it finds the documentation submitted by Defendants creates its own confusion. With few exceptions, the hours reported on the timesheets do not match the hours reported on the pay stubs. Because pay stubs contain comprehensive payroll information and are the Company's official record, the court finds the pay stubs are more reliable for determining overtime hours.

Based on the pay stubs, Ms. Talbot worked 642:58 hours of overtime.[14] Because she did not work 80 hours during the last pay period she was on salary, the court deducts 19:41 hours from her overtime, for a net total of 623:17 hours.

Additionally, the court credits the entries on the timesheets that Defendants marked "questionable" as being a fair approximation of hours that should be deducted from the overtime hours. The "questionable" entries total 125:45 hours. When subtracted from 623:17, the remaining overtime hours are 497:32. As stated above, Ms. Talbot's hourly rate was $25.00. Overtime accrues at "one and one-half times the regular rate at which [the person] is employed." 29 U.S.C. § 207(a)(1). Here, the overtime rate is $37.50 per hour for 497:32 hours,[15] which equals $18,657.49. The court concludes that amount reflects an appropriate sanction for Defendants'

---

[14]   Ms. Talbot's initial documentation shows how she calculated hours based on her pay stubs. Talbot Spreadsheet, at 13 (ECF No. 11). There are two entry errors, which resulted in lower claimed hours of overtime in comparison to the pay stubs. Additionally, the spreadsheet does not claim overtime for the first pay period in January 2017. Although the pay stub for that period shows only 68:18 hours were worked, as explained above, that pay period was shorter. Pay Stub, at 12 (ECF No. 70-1). It had seven compensable days, which would equate to a 56-hour pay period. Ms. Talbot worked 12:18 hours more than the pay period required. The court has included that amount in its calculation. When combined with the corrected entry errors, the total overtime on the pay stubs is higher than the amount reported by Ms. Talbot.

[15]   The court notes that 32 minutes is a 0.533 fraction of an hour and equates to $19.99 when the hourly rate is $37.50.

misconduct, while taking into account concerns over Ms. Talbot's reported overtime.

**B.      Attorney Fees**

The FLSA mandates an award of attorney fees and costs when a plaintiff prevails on an FLSA claim.  29 U.S.C. § 216(b).  Here, the case has not been decided on the merits.  Instead, default judgment has been awarded as a sanction for Defendants' misconduct.  Had Ms. Talbot proceeded to trial, however, she may have prevailed on her FLSA claim.  Moreover, Ms. Talbot incurred attorney fees to seek discovery of the recording and documents that had been withheld. She further incurred attorney fees related to her Motion for Sanctions.  Were the court to withhold an award of attorney fees to Ms. Talbot, Defendants would benefit from their misconduct.

Accordingly, as an additional sanction, the court awards attorney fees in favor of Ms. Talbot.  The court concludes attorney fees are a sufficient additional sanction for Defendants' misconduct.  Thus, Ms. Talbot shall bear her own costs.

**C.      Sanction of Counsel**

As discussed above, the conduct of Defendants' counsel also has been troubling.  Not advising about a preservation letter, submitting evidence and argument with misleading information, and failing to acknowledge the seriousness of Defendants' misconduct are contrary to how counsel should conduct itself in a case.  Accordingly, Defendants' counsel shall personally pay Ms. Talbot $2,500 as a sanction.  Payment shall be remitted to Ms. Talbot's attorney for distribution to her.

## CONCLUSION and SCHEDULING ORDER

For the reasons stated above, the court GRANTS Ms. Talbot's Motion for Sanctions (ECF No. 56).  The court specifically cautions Defendants and counsel about the need for preservation

and timely production of evidence, making careful and truthful representations to the court, and adherence to court orders.  By so specifying, this does not mean Defendants and counsel have not been warned about other litigation abuses.  The following award is imposed to correct a wrong, to warn, and to deter Defendants and counsel from engaging in future litigation abuses.

1.  Default Judgment is entered in favor of Ms. Talbot in the amount of $18,657.49

2.  Attorney fees are awarded in favor of Ms. Talbot, but she shall bear her own costs.

3.  On or before August 19, 2020, Ms. Talbot shall file documentation to support the amount of attorney fees claimed.  If Defendants oppose the amount of fees claimed, they shall file an opposition brief on or before September 9, 2020.  Any reply brief shall be filed on or before September 23, 2020.

4.  On or before September 30, 2020, Defendants' counsel shall remit $2,500 to Ms. Talbot's counsel for distribution to her.

SO ORDERED this 29th day of July, 2020.

BY THE COURT:

Clark Waddoups
United States District Judge